**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SUSIE LEAHY, *individually and as Guardian ad Litem for* REBECCA SUSAN LEAHY, *a minor,* HANNAH JOY LEAHY, *a minor*, and WILLIAM JOHN LEAHY, III, *a minor*,

    Plaintiffs,

vs.

LONE MOUNTAIN AVIATION, INC., a corporation; and DOES 1 through 20, inclusive,

    Defendants.

Case No.: 2:10-cv-00082-GMN-PAL

**ORDER**

This is diversity action filed by the sole surviving heirs of decedent William John Leahy, Jr. – California residents Plaintiff Susie Leahy, individually, and as Guardian ad Litem for Plaintiffs Rebecca Susan Leahy, Hannah Joy Leahy, and William John Leahy, III, who are minors (collectively, "Plaintiffs") – against Defendant Lone Mountain Aviation, Inc., and Does 1 through 20, inclusive.  Pending before the Court is the Motion in Limine and Motion for Summary Judgment filed by Defendant Lone Mountain Aviation, Inc. ("Lone Mountain Aviation"). (ECF Nos. 51, 52.)[1]  Plaintiffs filed a Response (ECF No. 57) and Lone Mountain filed a Reply (ECF No. 63).

**I.     BACKGROUND**

On August 28, 2008, William John Leahy, Jr. was piloting a twin-engine Piper PA-31-350 Navajo Chieftain aircraft from Las Vegas, Nevada, to Palo Alto, California, when it apparently lost power, caught on fire, and crashed shortly after takeoff, resulting in his death.

---

[1] Although Lone Mountain filed the motions as one brief, the Clerk's Office re-filed the brief so that each motion is represented by a different docket number – the Motion in Limine at ECF No. 51, and the Motion for Summary Judgment at ECF No. 52.

Plaintiffs filed suit in this Court alleging two causes of action: (1) Negligence Causing Wrongful Death; and (2) Strict Liability for Product Defect and Failure to Warn. (Compl., ECF No. 1.)  Plaintiffs also filed suit against Signature Engines, Inc. ("Signature Engines"), in the United States District Court for the Southern District of Ohio, *Leahy v. Signature Engines, Inc.*, No. 1:10-cv-00070-SSB-KLL, and requested consolidation before a Multi-District Litigation Panel which was denied in June 2010. (ECF No. 29.)[2]

In its Answer, Defendant Lone Mountain Aviation admitted that it is an aircraft maintenance facility that performed services on the subject aircraft prior to the crash. (ECF No. 15.)  Specifically, Lone Mountain Aviation changed the oil and filter on the left engine on July 28, 2008, and issued an Export Certificate of Acceptance on August 15, 2008, for export of the plane to South Korea. (Def.'s MIL-MSJ, 3:12-15.)

A Discovery Plan and Scheduling Order was issued in June 2010 (ECF No. 31) and an extension was granted in March 2011 (ECF No. 37).  Dispositive motions were due February 6, 2012, (ECF No. 50) and the instant motion is the sole dispositive motion that was filed before this Court.

With the instant motion, Defendant Lone Mountain Aviation "is seeking a preliminary ruling pursuant to [Federal Rule of Evidence] 104 to determine whether the opinions set forth by Plaintiffs' witnesses are admissible under [Federal Rule of Evidence] 702." (Def.'s MIL-MSJ, 5:13-14, ECF No. 51.)  Defendant explains that "this is a Motion to first determine if the Plaintiffs' experts can testify and then it seeks Summary Judgment on all claims." (*Id.* at 5:17-19)

## II. LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the

---

[2] Trial is currently set for November 5, 2012. Scheduling Order, *Leahy v. Signature Engines, Inc.*, No. 1:10-cv-00070-SSB-KLL (S.D. Ohio June 27, 2012), ECF No. 78.

course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Federal Rule of Evidence 103(c)). *In limine* rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

The admissibility of expert testimony is governed by Federal Rule of Evidence 104, which provides for a court to decide "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a). "In so deciding, the court is not bound by evidence rules, except those on privilege." *Id*. In order to satisfy the burden of proof for Rule 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

Federal Rule of Evidence 702 provides that a qualified expert witness may provide testimony in the form of an opinion if the Court finds that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In 2000 this rule was amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, including *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999).

### III. DISCUSSION

With the instant motion, Defendant argues that the "opinions [of Plaintiffs' witnesses

Douglas Stimpson, Harry Hasegawa, and Manuel Raefsky] do not meet the standards for admissibility." (Def.'s MIL-MSJ, 16:12-13.)  To support this argument and to contradict Plaintiffs' witnesses, Defendant cites these three witnesses' depositions, as well as to the depositions of eyewitnesses to the crash, Robert Dubro, Kimberly Layton-Shah, and her son Dallin Layton. (Exs. E-G, I-L to Def.'s MIL-MSJ.)  Defendant also provides copies of the National Transportation Safety Board (NTSB)'s reports. (Exs. C-D to Def.'s MIL-MSJ.)

### A.   Factual Background

The parties' briefs and exhibits provide the following factual background.  The plane's owner had arranged to transport the plane from the United States to South Korea for sale.  In Cincinnati, Ohio, Signature Engines was hired to overhaul the two engines.  One pilot, Fred Sorenson, was originally hired to transport the plane from Cincinnati, Ohio, to Las Vegas, Nevada, and then to South Korea.  After flying the plane from Cincinnati to Las Vegas in June or July of 2008 and encountering problems, Sorenson took the plane to Lone Mountain Aviation for repair.

Lone Mountain Aviation changed the oil and filter on the left engine on July 28, 2008, and issued an Export Certificate of Airworthiness[3] on August 14, 2008, for export of the plane to South Korea. (Def.'s MIL-MSJ, 3:12-15; Pls.' Resp., 4, ECF No. 57.)

After delays in obtaining Federal Aviation Administration (FAA) permits in Las Vegas, William John Leahy, Jr., was hired instead of Sorenson to fly the plane to Palo Alto to obtain the FAA permits before then flying the plane to Korea.  Leahy flew to Las Vegas by commercial air on August 28, 2008 to meet with Sorenson and to transport the plane.

The NTSB report states that within minutes of departing North Las Vegas Airport (VGT) the plane "experienced a loss of right engine power during en route climb" and Leahy

---

[3] Defendant's Motion in Limine refers to this as an "Export Certificate of Acceptance," and uses the date August 15, 2012, but the Court will refer to the document as referenced by the Plaintiffs, and will use the date alleged by Plaintiffs.

"attempted an emergency landing back at VGT." (NTSB Report, 1, Ex. C to Def.'s MIL-MSJ.) Less than ten minutes after departing, Leahy "advised the Las Vegas Terminal Radar Approach Control (TRACON) facility that he was declaring an emergency and desired to immediately return to VGT" and he was immediately cleared. (*Id.*)  Leahy "broadcast that he had an 'engine failure rough engine.'" (*Id.*)  Less than fifteen minutes after departure and less than a mile and a half from the airport, the plane crashed into a residential neighborhood in flames and Leahy was dead. (*Id.* at 1-1a.)

Eyewitnesses reported smoke, fire and flames coming from the plane as it descended, particularly the right engine. (*Id.* at 1a.)  One eyewitness, Dubro, reported "two or three quick puffs of smoke" produced by the left engine, of which "[o]ne smoke stream was about 20 feet long, and then the smoke stopped." (*Id.*)  At the time of the accident flight, "[t]he engines' total time since last major overhaul was about 26 hours." (*Id.* at 1b.)

### B. <u>Analysis</u>

As discussed below, the Court finds that Defendant's motion lacks clarity as to which specific opinions of the three experts are inadmissible.  Defendant makes blanket statements in the motion such as "there is no testimony by any of the Plaintiffs' experts that meet with the reliability requirements of FRE 702 and which would assist any trier of fact at arriving at an opinion in this case." (Def.'s MIL-MSJ, 26:6-9.)  However, Defendant does not specify the exact opinions that are inadmissible, nor is Defendant clear as to the factual grounds supporting each argument.  Instead, Defendant recites excerpts of the depositions and the NTSB reports, and requests that the Court find that each witness's testimony is completely inadmissible. Defendant's request for summary judgment in its favor likewise lacks factual support.

Because Defendant's arguments focus on Stimpson, the Court addresses this first. Defendant begins with a quotation from Stimpson's deposition:

> I believe that what occurred was a fire started in the area of the left engine accessory area where the exhaust system vents, or it goes overboard from the

      turbocharger, and that a fire erupted most likely from the oil and fuel in that area, and I'll tell you now, so you know where I'm coming from, I believe most likely it was the oil from the oil breather system, the air-oil separator, and that caused a fire, and ultimately caused a crash.

(Stimpson Deposition, Ex. I, 6:18–7:1, ECF No. 51-9.)  Defendant also states that Stimpson opined that "the defect in the turbo exhaust pipe would have been present at the time Signature Engines overhauled the engines." (Def.'s MIL-MSJ, 16:24-25.)

      Defendant then argues that Stimpson's opinion "does not comport with the findings of the NTSB," and raises questions regarding Stimpson's deposition testimony, as well as the testimony of Raefsky and Hasegawa, such as, "Why would Mr. Leahy have feathered the right engine if his left engine was on fire?" and "[t]he question then is why there wasn't a fire before August 28, 2008." (Def.'s MIL-MSJ, 17:5, 14-16, 21-22.)  Defendant then argues that "[t]here was no physical evidence of any in-flight fire of the left engine, and all we are looking at are assumptions, conjecture and guesses on the part of these experts." (Def.'s MIL-MSJ, 18:21-23.)

      Defendant closes with an argument that because Raefsky, Stimpson and Hasegawa did not conduct testing to simulate the accident, their testimony is without sufficient basis and must be "rejected." (Def.'s MIL-MSJ, 25:11-23.)

      However, as explained by Plaintiffs in their Response, each witness based their opinions on their observations, the reports about the accident, and their training and experience.  Because Defendant's arguments are directed toward the conclusions reached by Stimpson, Raefsky and Hasegawa, and not the basis for the conclusions, the Court finds no grounds on which to grant the motion pursuant to Federal Rule of Evidence 702. At this time, the Court is not persuaded that Plaintiffs' witnesses rely on insufficient facts or data, or that their testimony is the product of unreliable principles and methods, or unreliable application of the facts to those principles and methods.

      Also, because most of the issues raised by Defendant address the weight of the experts'

opinions, and not the reliability of their testimony, the Court agrees with Plaintiffs that these questions are not proper grounds for a motion *in limine*, but are more properly reserved for cross-examination. Accordingly, the motion will be denied. Defendant may raise the issue again at trial.

Defendant's Motion for Summary Judgment is based on the argument that Plaintiffs cannot tie Lone Mountain Aviation to the engine fire. The Court agrees with Plaintiffs that Defendant's Motion for Summary Judgment also lacks sufficient factual evidence and is procedurally insufficient. Accordingly, the Motion for Summary Judgment will be denied as well.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine and Motion for Summary Judgment (ECF Nos. 51, 52) are **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a Joint Pretrial Order within thirty (30) days from the date of this Order.

DATED this 25th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge